UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON D. SEYMOUR,<br><br>Plaintiff,<br><br>v.<br><br>H. SHIRLEY, et al.,<br><br>Defendants. | Case No. 1:22-cv-00938-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE DENIED<br><br>(ECF No. 20)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I.   INTRODUCTION

Aaron D. Seymour ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action. The complaint commencing this action was filed on July 29, 2022.[1] (ECF No. 1). Plaintiff alleges that the water at Wasco State Prison is contaminated, and that defendants Shirley, Degough, and Cronjager have not appropriately responded to the issue. The Court screened Plaintiff's complaint and allowed the case to proceed on Plaintiff's Eighth Amendment conditions of confinement claims against defendants Shirley, Degough, and Cronjager. (ECF No. 9).

On February 9, 2023, defendants Cronjager and Shirley moved "to dismiss the complaint against them because Seymour failed to allege sufficient facts to state an Eighth

---

[1] On June 29, 2022, Plaintiff lodged the complaint in Seymour v. Shirley, E.D. CA, Case No. 1:21-cv-01485, and on July 29, 2022, the Court in that case ordered that the complaint be docketed in this newly opened action. Id. at ECF Nos. 47 & 50.

1

Amendment conditions of confinement claim against these Defendants." (ECF No. 20, p. 1).[2] The motion does not refer to the Court's screening order or reasoning in allowing these claims to proceed. Therefore, the Court recommends denying Defendants' motion to dismiss for the reasons explained in that order, as set forth below.[3]

## II.  CLAIMS AT ISSUE

### a.  Plaintiff's Prior Case

Plaintiff first filed the claims that are proceeding in this case in Seymour v. Shirley ("Seymour I"), E.D. CA, Case No. 1:21-cv-01485. Plaintiff's First Amended Complaint was screened, and based on allegations that are substantially similar to the allegations in this case, District Judge Anthony W. Ishii allowed the case to proceed on Plaintiff's Eighth Amendment conditions of confinement claim against defendants Doe 1, Degough, and Doe 2. Id. at ECF Nos. 13, 14, & 18. The Doe defendants were later identified as Shirley and Cronjager. Id. at ECF No. 40.

This action was subsequently dismissed, without prejudice, for failure to exhaust administrative remedies. Id. at ECF No. 50. As Plaintiff had already refiled his complaint in Seymour I, the Court also directed the Clerk of Court to open a new action and docket a copy of the refiled complaint in that action.

Plaintiff's refiled complaint is now proceeding in this action.

### b.  Summary of Plaintiff's Complaint

Plaintiff alleges as follows in his complaint:

Since December 14, 2017, Wasco State Prison has been failing the California Domestic Water Quality & Monitoring Regulations, and thus violated federal anti-pollution laws with MCL 1, 2, 3-TCP ("TCP"). TCP is a carcinogenic chemical. It is the byproduct of a varnish remover for combustion engines. It causes severe harm to humans, including cancer. The level

---

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.
[3] The Court issues these findings and recommendations without further briefing from the parties because, as described in these findings and recommendations, both the undersigned and District Judge Anthony W. Ishii have found that Plaintiff sufficiently alleged Eighth Amendment conditions of confinement claims against defendants Cronjager and Shirley.

of TCP at Wasco State Prison is above the legal limit.

A three-year marker was set, from December 14, 2017, through December 14, 2020, to have remedied the contaminated water problem. However, nothing has been done. One year after the set date, the chemical contaminant continues to circulate. Defendants failed to circumvent this egregious risk to human life. The lack of action from Defendants has exacerbated the problem. The legal limit set by federal regulations for TCP is equivalent to 0.005 ug/L. However, over the course of four years it has grown from 0.008 ug/L, to 0.019 ug/L, to 0.022 ug/L, and the number continues to rise.

"[D]efendant(s) did not effectively intervene and immediately halt superior's failed conversations to stop this contamination." (ECF No. 1, p. 3). They continued to "allow" an outdated memo of misinformation and did not provide updates as to any progress (because there was none). They did not inform their constituents of the real risk. If Defendants would have abided by OSHA, the federal anti-pollution law, and California Department of Corrections and Rehabilitations' own rules to maintain health and safety, the triple threat of Valley Fever, COVID-19, and the cancer epidemic would not exist.

Defendant Shirley, the Warden, misallocated federal funds from the Wasco State Prison treasury for her and her colleagues' personal use. This depleted financial resources in place to combat and correctly treat the infectious water and to remove the G.A.C. system that has only exacerbated the problem. Defendant Shirley chose to withhold money that clearly would have been better suited going to the inmate canteen for the purchasing of clean bottled drinking water for inmates to buy. This would have reduced Plaintiff's exposure to the carcinogenic chemical in the water. Defendant Shirley works in Kern County and has firsthand knowledge of the severe risk of Kern County's water, as numerous cities (including Arvin and Delano) have suffered the same exposure to the health risk in their community. Additionally, the news, newspaper, and media have televised the rampant harm, and citizens have been banned from consuming the water.

Defendant Degough, the Wasco State Prison Water System Contractor, relayed false information to Wasco State Prison about the true risk and high exposure of TCP, showing

3

blatant disregard for Plaintiff's life, safety, and health.  If defendant Degough would have monitored the increase of the toxin and informed the administration correctly, Plaintiff would not be infected today.

Defendant Cronjager, the head of the Health and Safety Division of Wasco State Prison, has a sworn duty to always second guess, investigate, and go above and beyond to make sure that the water is not toxic or a threat to inmates' health.  However, he or she did not do so.  Defendant Cronjager is being reactive instead of proactive, and he is waiting for the harm to be done by the water.  He is using Plaintiff as a lab-rat instead of issuing an emergency and dispensing clean drinking water.

Plaintiff has no choice but to drink, bathe with, and eat with the contaminated water.  Heating the water to cook incubates the bacteria that could cause other outbreaks, like Legionnaire's disease.  All the staff above are privy to the danger yet have done little to nothing to stop Plaintiff's exposure to the infectious disease.  As a result, for the last four years the problem continues to worsen.

The water has caused Plaintiff severe kidney pain that has Plaintiff bedridden.  Sometimes he is paralyzed, nauseated, and numb in his limbs.  He suffers from extreme hair loss, eye irritation, headaches, rashes, highly elevated prostate specimen antigens, and extreme emotional distress.

   c. <u>Screening Order</u>

The Court screened Plaintiff's complaint.  In the screening order, the Court found as follows:

> Liberally construing Plaintiff's complaint, the Court finds that Plaintiff sufficiently alleges that he is forced to drink, bathe with, and eat with contaminated water, and that this contaminated water poses an excessive risk to his health and safety, to proceed past the screening stage.[4]  According to Plaintiff, he has already suffered numerous symptoms, including severe kidney pain, extreme hair loss, eye irritation, headaches, rashes, and highly elevated prostate specimen antigens.

---

[4] The Court notes that while Plaintiff mentions Valley Fever and COVID-19, Plaintiff does not appear to be bringing any claims based on exposure to Valley Fever or COVID-19.

>Liberally construing the allegations in Plaintiff's complaint, the Court also finds that Plaintiff sufficiently alleges that defendant Shirley (the Warden), defendant Degough (the Wasco State Prison Water System Contractor), and defendant Cronjager (the head of the Health and Safety Division of Wasco State Prison) knew of the contaminated water issue but failed to respond appropriately.[5] According to Plaintiff's allegations, all of these defendants were directly responsible for the health and safety of inmates at Wasco State Prison. Moreover, Plaintiff alleges that all of these defendants reside and/or work in Kern County. Finally, Plaintiff alleges that the news, newspaper, and media have televised the rampant harm, and citizens have been banned from consuming the water. Based on these allegations, the Court finds that Plaintiff's Eighth Amendment conditions of confinement claims against defendants Shirley, Degough, and Cronjager should proceed past screening.

(ECF No. 9, pgs. 7-8) (footnotes in original).

The only other claim in the complaint, Plaintiff's Eighth Amendment conditions of confinement against defendant Shirley based on allegations that she misallocated federal funds, was dismissed. (ECF No. 13).

### III.   DEFENDANTS' MOTION TO DISMISS

On February 9, 2023, defendants Cronjager and Shirley ("Defendants") filed a motion to dismiss. (ECF No. 20). Defendants argue that Plaintiff "fails to allege the requisite logical or factual relationship tying these defendants to the alleged harm he suffered because of the water contamination issue. There are no factual allegations, rather than factually devoid conclusions, in the complaint to indicate that either of the moving Defendants had actual knowledge at any time of a water contamination issue. Therefore the complaint is devoid of any facts demonstrating that Cronjager or Shirley took an affirmative action which exposed Seymour to harm. Nor are there any facts which show Cronjager nor Shirley failed to take a required action, which then actually or proximately caused Seymour harm." (Id. at 2).

Defendants also argue that they are entitled to qualified immunity because "there are no facts alleged that, if assumed true, would support the view that Defendant Shirley or Defendant Cronjager had personal knowledge of the problem Plaintiff alleges in his complaint, or that if they did, that they ought to have known not to rely on DeGough's reports." (Id. at 6).

---

[5] Based on Plaintiff's allegations, it appears that at least some of the defendants did act, at least initially. Plaintiff alleges that there was a three-year plan to deal with the issue. However, Plaintiff alleges the three-year period expired in December of 2020 and the issue continues to worsen.

5

Defendants do not address the Court's screening order.

## IV. LEGAL STANDARDS FOR A MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. See Iqbal, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

## V. DISCUSSION

### a. Legal Standards

#### i. *Section 1983*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant

holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### ii. *Conditions of Confinement*

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen,

642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. Farmer, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." Id. (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Id. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

### iii. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

\\\

b. Analysis

Liberally construing Plaintiff's *pro se* complaint, the Court recommends finding, as the Court previously found in its screening order, that Plaintiff sufficiently alleged that defendant Shirley (the Warden) and defendant Cronjager (the head of the Health and Safety Division of Wasco State Prison) knew of the contaminated water issue but failed to respond appropriately. In particular, Plaintiff alleged that Defendants "were directly responsible for the health and safety of inmates at Wasco State Prison." (ECF No. 9, p. 8). Moreover, Plaintiff alleged that Defendants "reside and/or work in Kern County." (Id.). Finally, Plaintiff alleged that "the news, newspaper, and media have televised the rampant harm, and citizens have been banned from consuming the water." (Id.). The Court also noted that while Plaintiff alleged a three-year plan was initially put in place to deal with the issue, Plaintiff also alleged that the "the three-year period expired in December of 2020 and the issue continues to worsen." (Id. at n. 4).

Thus, Plaintiff has alleged that Defendants, the Warden and the head of the Health and Safety Division of Wasco State Prison, are responsible for his safety. They also worked and/or resided in Kern County, where the contaminated water issue was reported in the news, newspaper, and media. Additionally, prison officials had previously attempted (and failed) to deal with the contaminated water issue. Liberally construing the allegations in Plaintiff's complaint, these allegations are sufficient to show that Defendants were aware of the contaminated water issue.[6] Despite knowing of the issue and being responsible for it,

---

[6] Circumstantial evidence can be used to show subjective knowledge. See, e.g., Farmer, 511 U.S. at 842-43 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. Hall 118 (cautioning against 'confusing a mental state with the proof of its existence'), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Cf. LaFave & Scott § 3.7, p. 335 ('[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of'). For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.' Brief for Respondents 22.") (alterations in original) (footnote omitted).

10

Defendants have not acted to remedy it.[7] The Court also notes that, as described above, Judge Ishii previously allowed identical claims to proceed against Defendants based on substantially similar factual allegations.

Defendants do point out that Plaintiff alleges that defendant Degough relayed false information to Wasco State Prison, and that if defendant Degough would have monitored the increase of the toxin and informed the administration correctly, Plaintiff would not be infected today. However, these allegations are conclusory. Moreover, even if defendant Degough provided false information to Defendants, as discussed above, Plaintiff also sufficiently alleged that Defendants knew of the contaminated water issue anyway, but failed to respond appropriately. Defendants cite to no law, and the Court is not aware of any, suggesting that just because one defendant could have prevented a conditions of confinement issue, no other defendants may be liable if they also failed to prevent that same issue. Moreover, parties are allowed to plead in the alternative. Fed R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim … alternatively or hypothetically, either in a single count … or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims … as it has, regardless of consistency.").

As to Defendants' argument regarding qualified immunity, it appears to be based on the first prong of the analysis, that is, whether the facts shown by Plaintiff make out a violation of a constitutional right.[8] As discussed above, the facts shown by Plaintiff make out a violation of his Eighth Amendment rights. Accordingly, Defendants' argument that they are entitled to qualified immunity is not persuasive.

\\\

\\\

\\\

---

[7] As discussed above, there was a failed attempt to remedy the issue, but that attempt ended in December of 2020 and the issue continues to worsen.

[8] Defendants do not argue that the law was not clearly established. Accordingly, the Court does not address this issue.

Based on the foregoing, the Court finds that Defendants' motion to dismiss should be denied.[9]

## VI. RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss (ECF No. 20) be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 10, 2023**          /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE

---

[9] As the Court already found in the screening order that Plaintiff sufficiently alleged Eighth Amendment conditions of confinement claims against defendants Cronjager and Shirley, the Court will not stay any deadlines based on this pending motion to dismiss.