1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   AARON D. SEYMOUR,                    No.  1:22-cv-00938-JLT-EPG (PC)

11                  Plaintiff,            FINDINGS AND RECOMMENDATIONS
                                          RECOMMENDING THAT DEFENDANTS'
12         v.                             MOTION FOR SUMMARY JUDGMENT BE
                                          GRANTED
13   HEATHER SHIRLEY, et al.,
                                          (ECF No. 75)
14                  Defendants.
                                          OBJECTIONS, IF ANY, DUE WITHIN
15                                         THIRTY (30) DAYS
16

17   **I.      INTRODUCTION**

18         Plaintiff Aaron D. Seymour is a state prisoner proceeding *pro se* and *in forma pauperis* in

19   this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's Eighth

20   Amendment conditions of confinements claims against Defendants Shirley, Cronjager, and

21   DeGough, stemming from Plaintiff's allegations that the water at Wasco State Prison (WSP) is

22   dangerously contaminated.

23         On January 10, 2025, Defendants filed a motion for summary judgment, arguing that the

24   undisputed facts showed that the water at WSP is not dangerously contaminated and that

25   Plaintiff's allegations of harm from drinking the water are incorrect. (ECF No. 75). On March 13,

26   2025, Plaintiff filed an opposition to Defendants' motion.  On March 27, 2025, Defendants filed a

27   reply in support of their motion for summary judgment, arguing that "[Plaintiff] provides no

28   evidence to dispute that [WSP's] water was safe or posed any risk of serious injury, and

                                          1

1  [Plaintiff] provides no evidence to show that his exposure to [WSP's] water supply posed any
2  substantial risk of injury." (ECF No. 80).

3      Upon review, the Court concludes that Defendants have presented sufficient evidence
4  showing that there are no genuine issues of material fact, and they are entitled to judgment as a
5  matter of law. Accordingly, the Court will recommend that Defendants' motion for summary
6  judgment (ECF No. 75) be granted.

7  ## II.      PLAINTIFF'S COMPLAINT

8      Plaintiff refiled his complaint on July 29, 2022. (ECF No. 1).[1] Plaintiff alleges as follows.

9      Defendant Scott DeGough, the acting Water Contractor, relayed false information to WSP
10  staff. He hid the danger of the contaminated carcinogenic water filled with 1, 2, 3,
11  trichloropropane (TCP). Defendant DeGough failed to monitor the true risks of the dangerous
12  toxin and failed to tell his superiors the truth of the risk of stomach ailments and the risk of
13  cancer.

14      Defendant J. Cronjager, the Head of Health and Safety, has a sworn duty to always second
15  guess, investigate, and go above and beyond to make sure that the water is not toxic and infested
16  with chemicals that kill and cause cancer.

17      Defendant H. Shirley, the Warden of WSP, is the overseer of the prison's wellbeing.
18  Defendant Shirley was aware that the water was contaminated but did not respond appropriately.

19      Plaintiff is forced to drink toxic water. Shafter, Wasco City, and WSP drink water from
20  Well #1 and Well #2. Defendant Shirley works in Kern County and has firsthand knowledge of
21  Kern County's water. Additionally, Plaintiff knows that Defendants knew about, and continue to
22  know about, the toxic water at WSP because of constant news stories, newspapers, and media
23  reporting on the water in Kern County.

24      WSP set a three-year date from December of 2017 to fix the problem.  However, five plus
25  years later, Defendants have made no progress in correcting the water supply. Because of the

26
27  [1] On June 29, 2022, Plaintiff lodged the complaint in Seymour v. Shirley (Seymour I), E.D. CA,
Case No. 1:21-cv-01485, but the action was dismissed without prejudice until Plaintiff exhausted his
administrative remedies. On July 29, 2022, the Court in that case ordered that the complaint be docketed in
28  this newly opened action. (ECF No. 9).

toxic water, Plaintiff suffers from severe kidney pain that leaves him bedridden, and is sometimes paralyzed, nauseated, and numb in his limbs. Plaintiff also suffers from hair loss, eye irritation, headaches, rashes, highly elevated prostate specimen antigens, and extreme emotional distress.

On August 9, 2022, the Court screened the complaint and found that "Plaintiff's Eighth Amendment conditions of confinement claims against defendants Shirley, Degough, and Cronjager should proceed past screening." (ECF No. 9, at p. 8).

## III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.  Defendants' Motion for Summary Judgment

Defendants' motion for summary judgment primarily argues that the water at WSP is not dangerously contaminated and that Plaintiff never suffered the medical conditions he alleges from drinking the water.[2] (ECF No. 75). Defendants claim that Seymour cannot establish the necessary elements of his Eighth Amendment conditions-of-confinement claims against Defendants, including the requirements that Seymour faced a substantial risk of a serious injury and that Defendants knew of and disregarded any substantial risk of a serious injury. (*Id.*, at p. 1).

In support of their argument, Defendants attached a memorandum of points and authorities arguing Plaintiff's "TCP exposure to be 1,000 times less than what a person can be exposed to over a lifetime without any adverse health effect," and Plaintiff's medical files demonstrate that Plaintiff's alleged "symptoms are not supported by his test results or other medical records." (ECF No. 75-1). Additionally, Defendants attached declarations by Defendants and expert witnesses, including a Certified Industrial Hygienist and the Chief Medical Executive at WSP, and a transcript of Plaintiff's deposition. (ECF No. 75-4, 5, 6, 7, 8, 9). And as required by Local Rule 260(a), Defendants provided a statement of undisputed facts, which statement cites the relevant evidence relied upon, including WSP posting quarterly notices stating WSP's specific TCP levels "were not high enough to cause illness" and "that inmates did not need to use an alternative source of water, like bottled water." (ECF No. 75-3).

### B.  Plaintiff's Opposition to Defendants' Summary Judgment

In his opposition, Plaintiff argues the expert opinion by an Industrial Hygienist is

---

[2] Defendants also raise additional arguments, including that Defendants are entitled to qualified immunity. The Court need not address these other arguments as the arguments discussed below dispose of this case.

1   insufficient, and that Defendants failed to provide an expert opinion by a Toxicologist. (ECF No.

2   79, at p. 1-2). Further, Plaintiff alleges there are no studies of TCP on humans, and states that

3   studies on rats show TCP causes cancer, liver and kidney damage, hair loss, and infertility.

4   (Plaintiff does not provide any exhibits of regarding such studies.)  Plaintiff also argues that

5   Defendants' remedial measures of contracting with W. M. Lyles Construction to remove TCP is

6   evidence Defendants recognize TCP as a risk. (*Id.*, at p. 3). Additionally, Plaintiff claims the

7   medical transfers of other inmates prove Defendants are covering up the connection between TCP

8   and the inmates' injuries. (*Id.*, at p. 4).

9       In support of his opposition, Plaintiff attached exhibits, containing emails from Kimberly

10  Niemeyer, attorney for the State Water Resources Control Board, and Alison Hardy, attorney for

11  the Prison Law Office, discussing the health risk of the contaminated water. (*Id.*, at p. 7-8, 11-12).

12  Specifically, Alison Hardy requested "records that set forth the basis and/or criteria for the

13  Board's determination that, given the current levels of 1,2,3-TCP in Wasco State Prisons' drinking

14  water,…the water is safe to drink." Kimberly Niemeyer responded that they do not have a

    specific document that responds to this request, but instead stated

15          The health risk (cancer) is based on a lifetime exposure (70 years), and the
            exceedance concentrations do not pose an immediate risk. The regulations for
16          organic chemicals, which includes 1,2,3-TCP, requires the water to be taken out of
            use if it exceeds ten times the drinking water standard, which is also referred to as
17          the maximum contaminate level. (Health & Safety Code section 64445.1) The
            exceedances do not reach that level.
18

19  (*Id.*, at p. 7-8). Additionally, Plaintiff attached an exhibit of the notice informing inmates that the

20  drinking water is not compliant with the maximum contaminant level of TCP. (*Id.*, at p. 13-14).

21      **C. Defendants' Reply in Support of Their Motion for Summary Judgment**

22          Defendants argue in their reply that "[Plaintiff] provides no evidence to dispute that

23  [WSP's] water was safe or posed any risk of serious injury, and [Plaintiff] provides no evidence

24  to show that his exposure to [WSP's] water supply posed any substantial risk of injury." (ECF

25  No. 80, at p. 2). Further, Defendants argue that Plaintiff failed to provide proof that no TCP

26  studies on humans exist, nor proof of TCP studies on rats. (*Id.*) Moreover, Defendants argue that

27  "[Plaintiff's] reliance on communications involving a representative from the California State

28  Water Resources Board and the Prison Law Office fail to establish that his TCP exposure poses a

1  substantial risk of serious injury to him." (*Id.*, at p. 5). Lastly, Defendants contend the Court

2  should disregard Plaintiff's claim that WSP officials transferred an inmate out of WSP to cover

3  up a connection to the prison's water supply, as Plaintiff's accusation is unsupported by any

4  evidence. (*Id.*)

5  ### IV.    LEGAL STANDARDS

6  #### A. Motion for Summary Judgment

7  Summary judgment in favor of a party is appropriate when there "is no genuine dispute as

8  to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

9  56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine

10  dispute about material facts, summary judgment will not be granted."). A party asserting that a

11  fact cannot be disputed must support the assertion by

12  > citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
13  > interrogatory answers, or other materials, or showing that the materials cited do
> not establish the absence or presence of a genuine dispute, or that an adverse party
14  > cannot produce admissible evidence to support the fact.

15  Fed. R. Civ. P. 56(c)(1).

16  A party moving for summary judgment "bears the initial responsibility of informing the

17  district court of the basis for its motion, and identifying those portions of 'the pleadings,

18  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

19  any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

20  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-

21  moving party bears the burden of proof at trial, the moving party need only prove that there is an

22  absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627

23  F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-

24  moving party to designate specific facts demonstrating the existence of genuine issues for trial,"

25  which is not a light burden, the party "must come forth with evidence from which a jury could

26  reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby,*

27  *Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the

28  plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

**B. Conditions of Confinement**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation for unconstitutional conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). And where this is an allegation concerning "a failure to prevent harm,

6

the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.*

Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson,* 217 F.3d at 731. Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

## C. ANALYSIS

In light of the above legal standards, the Court now considers Defendants' motion for summary judgment, which argues that the water at WSP is not dangerously contaminated, and that Plaintiff did not suffer any harm from drinking it.

### 1. Defendants' Evidence in Support of Summary Judgment

Defendants provide the following undisputed facts in support of their motion for summary judgment, which facts Plaintiff did not contest. (ECF No. 75-3).

Plaintiff arrived at WSP in May 2021 and was housed there until August 2023. At times relevant to the allegations in the complaint, Defendant Shirley was the WSP Acting Warden, Defendant Cronjager was the WSP Associate Warden, and Defendant DeGough was the WSP Correctional Plant Manager, who oversees the maintenance of physical plant operations and construction projects.

TCP is a chemical typically used as an industrial solvent. (*Id.* at 2). On January 1, 2018, a California regulation went into effect that established a .005 ug/L maximum contaminant level (MCL) for TCP in California's drinking water.

During the time that Plaintiff was incarcerated at WSP, the water was tested and notices from the independent laboratory's findings were posted quarterly at the institution. The tests

revealed TCP level results that ranged from 0.000 ug/L to 0.024 ug/L. (*Id.*, at p. 3). Notices reporting the independent laboratory's findings regarding the levels of TCP in Wasco State Prison's water were posted quarterly throughout Wasco State Prison in compliance with California regulations. The quarterly notices stated that the TCP levels did not present an emergency and that inmates did not need to use an alternative source of water, like bottled water. Rather, they indicated that "'some people who drink water containing 1, 2, 3-trichloropropane in excess of the MCL over many years may have an increased risk of getting cancer,' and encouraged those concerned about other health issues to consult a doctor." (*Id.*).

Defendants' first expert, Nancy M. McClellan, is a Certified Industrial Hygienist who reviewed Plaintiff's complaint, transcript of Plaintiff's July 29, 2024 deposition, analytical test results of water around WSP, phone and email discussions with knowledgeable WSP operations staff, scientific references, and regulatory standards for TCP exposure. (ECF No. 75-6). She states:

> In calculating Seymour's TCP exposure, I accepted as true Seymour's testimony that, throughout his 27 months as an inmate at Wasco State Prison, he showered more than one hour every day, washed his face for 15 minutes every day, and was exposed to Wasco State Prison water for an hour every day as part of his plumbing maintenance work assignment. Also, I overestimated Seymour's daily ingestion of water by doubling the average person's typical water ingestion.
>
> Seymour's exposure to TCP at Wasco State Prison is conservatively calculated to be one thousand times less than the lowest allowed United States Environmental Protection Agency (EPA) reference dose. The EPA's reference dose is the daily exposure of TCP that a person can be exposed to on a daily basis that is not anticipated to cause adverse health effects over a lifetime. Thus, Seymour's exposure to TCP at Wasco State Prison for 27 months, being conservatively calculated as one thousand times less than the EPA's reference dose, could not produce acute or chronic health effects associated with TCP.

(*Id.* at 2-3).

Defendants' second expert, A. Youssef, is the Chief Medical Executive at WSP who reviewed "Seymour's complaint (ECF No. 1), Seymour's January 2024 Scheduling and Discovery Statement (ECF No. 49), and portions of Seymour's medical records retained by CDCR." (ECF No. 75-8). He states:

> I am unaware of any literature supporting any causal relationship between acute exposure to TCP over a period of 26 months and a patient developing chronic

1
2
3
4

kidney disease, prediabetes, prostate cancer, hair loss, eye irritation, headaches, rashes, liver pain, or high blood pressure. Additionally, based on my four decades of experience in the medical field, I am unaware of any causal relationship between acute exposure to TCP over a period of 26 months and a patient developing chronic kidney disease, prediabetes, prostate cancer, hair loss, eye irritation, headaches, rashes, liver pain, or high blood pressure.

5
6

(*Id.* at 3). In short, he concluded that "Seymour's claimed symptoms were not caused by his exposure to TCP while he was incarcerated at Wasco State Prison." (*Id.*)

7
8
9
10
11
12
13

Upon review of this undisputed evidence, the Court concludes that Defendants have met their initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Defendants have presented evidence showing that, while the TCP levels at times exceeded the MCL, the water was not dangerously contaminated. Most notably, Defendants have presented the expert opinions of Nancy M. McClellan, who opines that that Plaintiff would not be expected to have even a minimal risk of harmful effects during his lifetime, and A. Youssef, who opines that Plaintiff's symptoms were not caused by his exposure to TCP.

14
15
16

In light of the evidence establishing that Plaintiff was not incarcerated under conditions posing a substantial risk of serious harm, nor harmed at all, the burden shifts to Plaintiff to demonstrate a genuine issue of material fact for trial.

17

### 2.  Plaintiff's Evidence in Opposition to Summary Judgment

18
19
20
21
22
23
24

In his opposition to summary judgment, Plaintiff first argues that an Industrial Hygiene Expert's opinion is insufficient, and that Defendants failed to provide an expert opinion by a Toxicologist. (ECF No. 79, at p. 1-2).  Federal Rule of Evidence 702 permits opinion testimony by witnesses who are qualified as an expert by knowledge, skill, experience, training, or education. (Fed. R. Evid. 702). Moreover, Federal Rule of Evidence 703 allows an expert to base an opinion on facts or data in the case that the expert has been made aware of or personally observed. (Fed. R. Evid. 703).

25
26
27
28

According to her declaration, Nancy McClellan is "a Certified Industrial Hygienist and Certified Materials Manager with experience is profiling chemical exposures" who "can accurately calculate the extent of an individual's exposure to TCP, and…can conclude whether or not an individual's exposure to TCP could produce acute or chronic health effects." (ECF No. 75-

6, at p. 1-2). McClellan bases her expert opinion on Plaintiff's testimony that "throughout his 27 months as an inmate at Wasco State Prison, he showered more than one hour every day, washed his face for 15 minutes every day, and was exposed to Wasco State Prison water for an hour every day as part of his plumbing maintenance work assignment." (ECF. No. 75-6, at p. 2). McClellan opines that Plaintiff's "exposure to TCP at Wasco State Prison is conservatively calculated to be one thousand times less than the lowest allowed United States Environmental Protection Agency (EPA) reference dose." (*Id.*, at p. 3).

Based on this information, the Court finds that McClellan has sufficient expertise and bases for her opinions. Plaintiff fails to explain why her knowledge, skill, experience, training, or education are insufficient to qualify her to render her opinions, nor how her opinions lacked sufficient evidentiary basis. Accordingly, the Court finds McClellan is qualified to issue the expert opinion that Plaintiff "could not produce acute or chronic health effects associated with TCP." (*Id.*)

Plaintiff next argues that there are no studies of TCP on humans, and that studies on rats show TCP causes cancer, liver and kidney damage, hair loss, and infertility. (ECF No. 79, at p. 2). However, Plaintiff does not provide the studies, or any evidence to support this assertion.

Plaintiff next argues that Defendants' remedial measures of contracting with W. M. Lyles Construction to remove TCP from the water supply is evidence Defendants recognize TCP as a risk. (*Id.*, at p. 3). However, this argument fails to prove a sufficiently serious deprivation. Adding a system to remove toxins out of potable water does not prove the water is contaminated to levels posing a substantial risk of serious harm. Moreover, Federal Rule of Evidence 407 prohibits a party from relying on subsequent remedial measures to prove culpable conduct. (Fed. R. Evid. 407) ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."); *see also* Advisory Committee Notes for Rule 407 ("ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety"). Accordingly, evidence that Defendants attempted to remove TCP from the water supply also does not create a genuine issue of material fact as to whether the water

1  posed a serious risk of harm.

2      Plaintiff next argues that medical transfers prove Defendants are covering up the

3  connection between TCP and the inmates' injuries. However, this argument is another conclusory

4  allegation unsupported by evidence—either that such medical transfers occurred or that they were

5  done due to contaminated water.

6      Plaintiff's opposition also attached exhibits containing emails between Kimberly

7  Niemeyer, attorney for the State Water Resources Control Board, and Alison Hardy, attorney for

8  the Prison Law Office, discussing the health risk of the contaminated water. (ECF No. 79, at p. 7-

9  8, 11-12). Specifically, Alison Hardy, attorney from the Prison Law Office, refers to the prison

10 notices about the drinking water failing the standard for TCP and requests records supporting the

11 Board's determination that the water is safe to drink.  (ECF No. 79, at p. 7-8).  Kimberly

12 Niemeyer, attorney for the State Water Resources Control Board, responds stating that "[w]e do

13 not have a specific document that responds to your request," but explains that the relevant water

14 regulation "requires the water to be taken out of use if it exceeds ten times the drinking water

15 standard," and that "the exceedances do not reach that level."  (ECF No. 79, at p. 7).  These

16 emails also do not provide evidence supporting Plaintiff's constitutional claim.  Rather, they

17 provide evidence that the State Water Resources Control Board believed that "the exceedance

18 concentrations do not pose an immediate risk."  (ECF No. 79, at p. 7).

19     Accordingly, because Plaintiff has failed to come forth with evidence from which a jury

20 could reasonably render a verdict in his favor, the Court will recommend that Defendants' motion

21 for summary judgment be granted.

22     **D. CONCLUSION AND RECOMMENDATIONS**

23     For the above reasons, there is not a genuine dispute of material fact and Defendants are

24 entitled to judgment as a matter of law.

25     Accordingly, IT IS RECOMMENDED that:

26 1.  Defendants' motion for summary judgment (ECF No. 75) be GRANTED, and

27 2.  Judgment be entered in Defendants' favor, and that the Clerk of Court be directed to

28     close this case.

11

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 16, 2025**                    /s/ *Erica P. Grosjean*
                                                   UNITED STATES MAGISTRATE JUDGE

12